947 F.2d 952
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arthur Weeden; Virginia Weeden; Weeden's Television
Rental, Inc., Plaintiffs-Appellants,
v.
TOWN OF CLYDE HILL, Defendant-Appellee.
 No. 90-35237.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 5, 1990.
Decided Oct. 24, 1991.
 
 Before EUGENE A. WRIGHT, GOODWIN and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Arthur Weeden et al. appeal a summary judgment in their action for damages under 47 U.S.C. §§ 521-559 (1988), the Cable Communications Policy Act, and 42 U.S.C. § 1983 (1988).
 
 
 3
 In 1979, the Town of Clyde Hill granted a non-exclusive 15-year cable franchise to Weeden's Television Rental, Inc., owned by Arthur and Virginia Weeden.[1] The original ordinance, which set out the Town's requirements for a cable system, provided that the company awarded the franchise would be required to maintain "a good and sufficient bond as determined by the Town." The ordinance also provided that the franchise could be terminated for cause on 30-days' notice. The Town later passed an amending ordinance specifying the bond amount at $60,000. Ordinance 416.
 
 
 4
 In 1986, Weeden's asked the Town to modify the amount, arguing that because construction was ninety percent complete, a smaller bond would protect the Town. Weeden's also argued that a smaller bond should be sufficient because comparable communities in the region required much smaller bond amounts for their cable franchisees. The Town refused and eventually cancelled the franchise for failure to maintain the bond. After unsuccessful efforts to persuade the Town to renew the franchise with a modified bond amount, Weeden's initiated this lawsuit.
 
 
 5
 In its suit, Weeden's alleged claims under the Cable Communications Policy Act, 47 U.S.C. §§ 521-559. Weeden's also brought claims under 42 U.S.C. § 1983 for violations the Cable Act and of due process. Weeden's later moved to amend the complaint to add section 1983 claims under the contracts clause and the first amendment. The district court denied the motion to amend and granted summary judgment for the Town. We affirm.
 
 I. Cable Act Claims
 
 6
 The parties dispute whether Weeden's may use section 1983 to bring claims under the Cable Act. The parties further dispute the merits of Weeden's Cable Act claims.
 
 
 7
 Parties injured when a state deprives them of rights "secured by the Constitution and laws" may sue under 42 U.S.C. § 1983 (1988). Section 1983 is available when a state violates rights secured by federal statute. Maine v. Thiboutot, 448 U.S. 1, 4-8 (1980). The Supreme Court has held, however, that when "the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 20 (1981).
 
 
 8
 Where a federal statute creates enforceable rights, a section 1983 action will lie against a state's political subdivisions unless the defendant can show that Congress intended the statute in question to provide the exclusive remedy. Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n, 739 F.2d 1467, 1470-71 (9th Cir.1984); see also Wright v. City of Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 423-24 (1987).
 
 
 9
 The district court ruled that the Cable Act was a "comprehensive scheme" providing its own enforcement mechanisms, and that review under section 1983 was therefore precluded. The court was examining Weeden's section 1983 claims alleging violations of sections 541, 544, 545, and 546 of the Cable Act.
 
 
 10
 Section 555 sets out a procedure by which cable operators may bring actions under sections 545 and 546. The Act does not discuss judicial remedies for alleged violations of sections 541 and 544. The parties break the section 1983 question into two parts: (1) Whether a section 1983 action can exist for the sections of the Cable Act that do not mention judicial remedies; and (2) Whether a section 1983 action can exist for the sections of the Cable Act that explicitly provide judicial remedies.
 
 
 11
 A. Sections of the Cable Act That Do Not Provide a Judicial Remedy--Sections 541 and 544
 
 1. Section 1983
 
 12
 The Town cites two cases that found no implied private right of action for sections of the Cable Act that do not expressly provide for a judicial remedy. See Cable Investments, Inc. v. Woolley, 680 F.Supp. 174, 178-80 (M.D.Pa.1987), aff'd on other grounds, 867 F.2d 151 (3d Cir.1989); Rollins Cablevue, Inc. v. Saienni Enters., 633 F.Supp. 1315, 1317-20 (D.Del.1986).
 
 
 13
 This circuit has noted that a plaintiff must overcome a much higher burden to establish an implied private right of action than to establish a right to bring a section 1983 action. To establish the former, the plaintiff must show congressional intent to create a private cause of action. By contrast, courts presume the availability of a section 1983 cause of action, and the defendant has the burden of showing contrary congressional intent. See Keaukaha-Panaewa, 739 F.2d at 1470-71.
 
 
 14
 Other courts have permitted section 1983 actions for sections of the Cable Act that do not provide their own judicial remedies. See, e.g., Playboy Enters., Inc. v. Public Service Comm'n of P.R., 906 F.2d 25, 31-33 (1st Cir.1990), cert. denied, 111 S.Ct. 388 (1990) (permitting a section 1983 action regarding the Cable Act's provisions relieving operators of liability for the content of transmissions); Van Meter v. Township of Maplewood, 696 F.Supp. 1024, 1027-28 (D.N.J.1988) (permitting a section 1983 action regarding the Cable Act's provisions on receiving satellite signals). We need not decide this question, because we hold that Weeden's has raised no colorable claims under these sections.
 
 2. Merits
 
 15
 Weeden's claims under sections 544(f)(1) and 541(a)(2) of the Cable Act concern restrictions placed on them by the Town. Once Weeden's failed to renew its bond, the Town immediately barred the company from performing any new construction or adding new customers, even in areas where construction had been completed. These restrictions were initially imposed when the bond first expired, before the franchise was terminated, and then were renewed when the Town decided to permit Weeden's to continue its existing operations after termination of the franchise.
 
 
 16
 Franchising authorities retain the power to enforce the terms of existing franchises, so long as those terms are not inconsistent with the Act. Section 557 provides that the terms of existing franchises remain in effect. Further, the House Report expressly states that matters not specifically covered in the legislation remain subject to state and local regulation, and that bonds are one such matter. See House Report at 4696 ("matters subject to state and local regulation, and that bonds are one such matter. See House Report at 4696 ("matters subject to state and local authority include, to the extent not addressed in the legislation, ... the enforcement and administration of a franchise (e.g., ... bonds, letters of credit, insurance and indemnification ...).").
 
 
 17
 The franchise at issue in this case included a provision permitting the Town to terminate for cause. Under Weeden's interpretation, when faced with a violation of a franchise term, the Town could have terminated the franchise completely but could not have permitted the franchise to continue operations under some restrictions. Nothing in the legislation appears to so restrict an authority's power to choose the means of enforcing a franchise.
 
 
 18
 B. Sections of the Cable Act Providing Judicial Remedies--545 and 546
 
 1. Section 1983
 
 19
 Although there may be cases permitting section 1983 suits for violations of Cable Act sections that do not provide judicial remedies, we have been cited no case allowing § 1983 actions for violations of sections 545 and 546, where the Cable Act does provide a judicial remedy. The Town argues that Weeden's should not be able to circumvent the procedures of section 555 by electing to sue under section 1983. Section 555 establishes procedures that cable operators must follow to obtain judicial relief for violations of sections 545 and 546.
 
 
 20
 In Sea Clammers, the Court held that where a statute sets out specific procedures for pursuing private causes of action and the plaintiff fails to comply with those procedures, section 1983 is not available as an alternative remedy. See 453 U.S. at 14. If we were to allow a claim under section 1983 for the alleged violations of sections 545 and 546, we would render meaningless the specific procedural requirements of section 555. We hold that section 1983 is not available for such claims. Remedies for violations of sections 545 and 546 must be pursued in accordance with section 555. We affirm the district court on this point.
 
 2. Compliance with section 555
 
 21
 a. Renewal--Section 546
 
 
 22
 Section 555 provides that a cable operator adversely affected by a determination made under section 546 must commence an action within 120 days of a final determination. The district court held that a "final determination" occurred either on May 6, 1986, when the Town Council voted to terminate Weeden's franchise, or on June 30, 1986, when the termination became effective. Hence, the court concluded that Weeden's had failed to seek judicial review within 120 days of the final determination. We find no error in this conclusion.
 
 
 23
 Construing the facts as alleged by Weeden's, Weeden's submitted a request, which it deemed a request for renewal, on June 30, 1986. The Town treated the June 30 request as an application for a new franchise. The town stated that it was soliciting other proposals, which were due on December 1, 1986, and that it would consider Weeden's proposal at that time. Weeden's filed this action on December 3, 1986, after it became clear that the Town would not consider its proposal.
 
 
 24
 Weeden's argues that at the time it filed suit, the Town had made no final determination on its renewal proposal, and that its renewal claim did not violate section 555's 120-day limitation.
 
 
 25
 Construing all facts favorably to Weeden's, Weeden's had lost its franchise on June 30. Because there was no longer an existing franchise, the Town was free to consider Weeden's new request a proposal for a new franchise, rather than a renewal proposal. Therefore, Weeden's did not have a renewal proposal pending at the time it filed suit. Weeden's did not file its action within 120 days of the Town's final action on its earlier proposals. Weeden's renewal under section 555 was not timely.
 
 
 26
 b. Modification Request-Section 545
 
 
 27
 Section 555 provides that a cable operator adversely affected by a determination made under section 545 must commence an action within 120 days of a final determination. As with the renewal provision, the parties dispute whether the action was brought within 120 days of a final determination. Weeden's argues that under Washington law, a municipality such as Clyde Hill can act only through a formal vote, and that the Town Council never took a formal vote on the modification request.
 
 
 28
 At the May 6, 1986 Town Council meeting, the Council passed a formal resolution terminating the franchise. Although the resolution did not explicitly refer to the request for modification of the bond, the minutes make clear that the Council was terminating the franchise because of Weeden's failure to post the $60,000 bond. Therefore, a final determination regarding the modification request occurred on either May 6, 1986, the date of the vote, or June 30, 1986, the date the termination became effective. Because Weeden's did not initiate its suit until December 1986, Weeden's failed to seek judicial review within the required 120 days.
 
 II. Weeden's Constitutional Claims
 A. Due Process
 
 29
 A cable television franchisee has a property right in its franchise that is entitled to due process protections. See, e.g., Teleprompter of Erie, Inc. v. City of Erie, 537 F.Supp. 6, 11 (W.D.Penn.1981). The Town does not dispute that Weeden's was entitled to due process in the termination of its franchise. Rather, the Town argues that Weeden's was in fact afforded due process. Weeden's asserts that the Town denied Weeden's a fair hearing, the right to confront witnesses, the right to see evidence that would be used against it, the right to notice of meetings, and the right to receive public comment after notice was provided to Town residents.
 
 
 30
 "At the core of the due process clause is the right to notice and a hearing 'at a meaningful time and in a meaningful manner.' " Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1405 (9th Cir.1989) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)), cert. denied, 110 S.Ct. 1317 (1990). Under Sinaloa Lake, the notice required by due process has at least two elements. First, the notice must include notice of the hearing at which the plaintiff's rights will be determined. Second, the notice must be sufficient to enable the plaintiffs to prepare for the hearing in a meaningful way. See id; see also Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.").
 
 
 31
 On January 27, 1986, the Town Administrator notified Weeden's that the bond had lapsed. While this letter did not warn of a possible termination, or give notice of a hearing on Weeden's failure to maintain the bond, Weeden's had notice of their default and that the town was officially concerned.
 
 
 32
 On April 1, 1986, the Town Council voted to give Weeden's notice that unless it paid money due the Town, and filed evidence of a renewed bond by April 18, the franchise would be terminated. On April 7, the Town notified Weeden's that if it did not file the bond by April 18, as well as make all payments due the Town by that date, the Town would terminate the franchise. On April 21, 1986, the Town sent Weeden's a letter stating that the Town planned to proceed with termination of the franchise because Weeden's had failed to meet the April 18 deadline. The letter explained that Weeden's could request the Town Council to reconsider the matter at its May 6, 1986 meeting.
 
 
 33
 At the May 6 meeting, the Town Council heard from Art Weeden and from Weeden's insurance broker. The Council debated the question of termination and voted to approve a resolution terminating the franchise as of June 30, 1986.
 
 
 34
 We hold that Weeden's received adequate notice of the May 6 meeting, and that meeting met the requirement that Weeden's have an opportunity to be heard "in a meaningful manner."
 
 
 35
 Weeden's now complains that in deliberating, the Council weighed evidence of customer complaints about Weeden's service, as well as considered a survey which the Town alleged showed that 48% of cable subscribers were dissatisfied with Weeden's. Weeden's also alleges that it was not permitted to see either the complaint file or the survey results before the Council voted on termination. These matters were redundant. The franchise agreement permitted the Town to terminate the franchise if Weeden's violated a franchise provision and maintaining the bond was a substantial requirement. On this record, the trial court correctly held that the Town could terminate the franchise solely because of the bond default. Therefore, the Town Council did not deny Weeden's due process, even if it failed to give Weeden's access to the complaint file and survey results prior to terminating the franchise. Weeden's had notice and an opportunity to be heard on its failure to maintain the bond, which failure provided the Town with sufficient grounds for terminating the franchise. Therefore, Weeden's received all the process that was due.
 
 
 36
 B. First Amendment and Contract Clause Claims
 
 
 37
 The trial court denied Weeden's motion to amend its complaint to allege violations of the first amendment and the contracts clause. We review a district court's denial of a motion to amend for an abuse of discretion. Under this standard, "the district court's discretion cannot be reversed unless this court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Parker v. Joe Lujan Enters., Inc., 848 F.2d 118, 121 (9th Cir.1988). The district court did not abuse its discretion in denying Weeden's motion, which was filed three years after the proceedings began.
 
 
 38
 A number of additional points were briefed and argued but none overcomes the decisive fact that Weeden's had defaulted on the bonding requirement and that the Town terminated the franchise after notice and hearing.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Appellants will be referred to jointly as Weeden's